EDELMIRO MARTÍNEZ RIVERA, Plaintiff and Appellee, *v.* R. SANCHO BONET, TREASURER OF PUERTO RICO ET AL., Defendants and Appellants.

No. 7553. Argued June 6, 1938.—Decided July 14, 1938.

B. *Fernández García, Attorney General, Emilio de Aldrey, Assistant Attorney General,* and *R. García Cintrón, Deputy Attorney General,* for appellants. *E. Martínez Rivera,* in pro. per., for appellee.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The plaintiff is the owner of a rural property containing forty-seven acres *(cuerdas)*, which is located in the ward of Abras, Corozal, and which he purchased as a part of a larger tract by deed No. 10 executed on March 27, 1930, before Notary Rafael Buscaglia. Said property has appeared in the taxpayers' list in the name of the plaintiff ever since 1932. Prior thereto it appeared as belonging to Tomás Anzalota. The plaintiff paid the taxes corresponding to the fiscal years 1933–34 and 1934–35, but on October 19, 1936, the Collector of Internal Revenue, one of the defendants, acting in the name and under the authority of the other defendant, Rafael Sancho Bonet, Treasurer of Puerto Rico, notified plaintiff that an attachment had been levied upon the said property which would be sold at public auction and the proceeds thereof applied to the payment of taxes due thereon and corresponding to the years 1928–29, 1929–30, 1930–31, 1931–32, 1932–33, and 1935–36. The receipts corresponding to the first four fiscal years, viz., 1928–29, 1929–30, 1930–31 and 1931–32 were made out to Tomás Anzalota, the former owner, and the others, that is, from 1932–33 on, to the plaintiff, Edelmiro Martínez Rivera.

Upon being notified of the attachment on October 19, 1936, the plaintiff called on the defendant collector and tendered the amount of the receipts for the fiscal year 1935–36 and the first semester of 1936–37, and the collector refused to accept such payment unless he also paid the receipts corresponding to the years from 1928–29 to 1932–33, inclusive, which the plaintiff refused to do.

He thereupon filed the complaint herein, seeking first a preliminary injunction and then a permanent injunction to restrain the defendants personally or through their agents from advertising and selling at public auction the property in question for the collection of the taxes above mentioned, and praying for any other proper relief under the allegations and for the imposition of costs and attorney's fees on the defendants.

Besides filing said complaint the petitioner deposited with the clerk of the court, at the disposal of the defendants, $66.65 as the amount of the taxes and surcharges for the fiscal year 1935–36 and the first semester of 1936–37.

As a basis for his first cause of action the plaintiff alleged that the attachment levied by the collector was void as to the year 1935–36 and the first semester of 1936–37, according to the complaint, because the amount thereof had been deposited, and regarding the fiscal year from 1928–29 to 1931–32, inclusive, he alleged that the attachment was also void for the following reasons:

(a) Because the taxes referred to in the receipts for the four fiscal years last mentioned appear to have been assessed, according to the plaintiff, upon a property other than the one attached which is owned by Tomás Anzalota.

(b) Because as the 47-acre property above mentioned had been attached on October 19, 1936, in order to enforce the lien imposed by section 315 of the Political Code, such attachment can only cover the current fiscal year at the time the same was levied, that is, 1936–37, and the three fiscal years next preceding, to wit: 1935–36, 1934–35, and 1933–34.

(c) Because the right to collect the taxes for the fiscal year 1928–29, 1929–30, and 1930–31 had prescribed when the attachment was levied on October 19, 1936, as more than five years had elapsed from the time of the assessment of the taxes for the said fiscal years; and

(*d*) Because the action of the defendants tends to deprive the plaintiff of his property without due process of law and to deny him the equal protection of the laws.

The plaintiff concluded by alleging irreparable damages, and that he has no other speedy and effective remedy in the ordinance course of law.

The court issued a rule to show cause why the preliminary injunction should not be granted. Thereupon the defendants appeared in opposition to the claims of the plaintiff and the court, on January 11, 1937, after hearing the evidence of both parties, denied the petition for a preliminary injunction. Afterwards the permanent injunction was sought upon the evidence submitted at the hearing of the preliminary injunction and on the 30th of the following March a judgment was rendered granting the permanent injunction in accordance with the prayer of the complaint, but without special imposition of costs.

The present appeal has been taken from the above judgment, four errors being assigned by the appellants. As the first two assignments are intimately related, we will consider them jointly.

"*First*.—The lower court erred in holding that the right of the Government to collect the taxes for the years 1928–29, 1929–30, 1930–31 and 1932–33 had prescribed at the time the compulsory process had been commenced by means of the attachment levied on October 19, 1938.

"*Second*.—The lower court erred in construing section 315 of the Political Code in the sense that 'The tax that is assessed for the current fiscal year, and for the three prior fiscal years' has reference to the taxes for the fiscal year when the attachment was levied (1936–37) and for the three years next preceding the attachment, viz., 1935–36, 1934–35 and 1933–34.''

It is a well-settled principle of American jurisprudence that taxes are not a lien on property unless expressly made so by statute. *New England Loan & T. Co.* v. *Young*

(Iowa), 10 L.R.A. 478; *Miller* v. *Anderson* (S.D.), 11 L.R.A. 317.

In *Johnson* v. *Revere Bldg.*, 79 A.L.R. 112, decided by the Supreme Court of Massachusetts in 1931, it was said:

"A tax upon real estate is primarily a pecuniary imposition upon the owner. The lien upon the real estate is simply a security established by statute of which the tax collector may avail himself in default of payment. Apart from statute no such lien exists. . . . The purpose of granting the lien is to allow the land to be taken or sold for nonpayment of taxes. (Citations.) . . . . It is a familiar principle that laws for the assessment and collection of taxes are to be strictly construed and that all doubts are resolved in favor of the taxpayer. If the right asserted in behalf of the tax or its collection is not clear, it must be denied; it must appear plainly from the words of the statute and cannot be sustained as within its spirit. *City National Bank* v. *Charles Baker Co.*, 180 Mass. 40, 41, 61 N. E. 223; *Eaton, Crane & Pike Co.* v. *Commonwealth*, 237 Mass. 523, 530, 130 N. E. 99; *Cabot* v. *Commissioner of Corporations and Taxation*, 267 Mass. 338, 340, 166 N. E. 852, 64 A.L.R. 1277."

See also 26 R.C.L. 388 and 3 R.C.L. Supp., 1471.

In *Linn County* v. *Steele* (Iowa), 110 A.L.R. 1493, decided by the Supreme Court of Iowa on June 15, 1937, the following appears:

"Taxes are not a lien upon the property assessed or other property of the taxpayer unless expressly made so by statute, and this lien can not be enlarged by judicial construction."

■ The above premise having been established, from an examination of our statutes we find that in accordance with the law in force prior to the enactment of the Revised Civil Code of 1902 (section 1923 of the Spanish Civil Code), a lien was only created in favor of the province or the municipality for the last annual assessments due and unpaid. Section 168 of the Mortgage Law for the colonies was to the same effect. So that even at that time, that is, up to 1902, taxes on real estate did not constitute a lien thereon save in regard to the last annual assessment due and unpaid.

Commenting on section 1923 of the Spanish Civil Code, Manresa says:

"*Credits in favor of the State for taxes and imposts.*—The State has a preferred credit with respect to the real property of taxpayers for the amount of the last annual assessment, due and unpaid, of the taxes to which the same is subject, and the ground for such preference is, of course, understood to be purely a fiscal one.

" 'Such credits,' Mr. Pedregal says, 'are of a truly privileged character and are still a reminiscence of the extinguished tacit mortgages, which are in conflict with the most cardinal principles of the Mortgage Law. They are liens on realty, without deriving such character from any contract, and they directly encumber the property affected without the constitution of the special mortgage that is required even from minors.'

"The ground for such preference being purely of a fiscal nature, we need not go into an examination of its precedents nor into a showing of its justice. It is imposed by the law of necessity so that the state may perform and promote its ends with due normality and regularity, and this consideration suffices to show its justification. For this reason the lawmaker has always provided for such need, by granting to the State a speedy and preferential remedy for collecting taxes or imposts to which the taxpayer's property is subject, in view of the special object to which they are applied as without an orderly collection of such revenues, the regular existence of the State and the proper functioning of its departments is not possible.

"In our former law, as we have already stated elsewhere, the State held a legal and general mortgage upon all the property of the taxpayer as a proper security for its credits of this character, and this privilege was recognized by the Mortgage Law, if not entirely, at least essentially, by reserving such right to the State, which reservation *was limited to one annual assessment, the last one due and unpaid, and to the property affected by the taxes and imposts due.* And in order to better secure its effectiveness, it was provided that said right should be expressly reserved in any deeds to be executed concerning the said property. At the present time it is sufficient for the notary to warn the parties verbally of this circumstance like any other required by law." (Italics ours.) (Manresa, *Comentarios al Código Civil,* 1911 ed., vol. 12, p. 705 *et seq.*)

In the Revised Civil Code of 1902, section 1824, similarly as in the Spanish Code, said lien was confined to the last

annual assessment due and unpaid. It was otherwise in the case of the coetaneous Political Code, whose section 315, in its pertinent part, reads as follows:

"The tax that is assessed against each piece or parcel of real property, including any improvements that may be thereon, or that may be subsequently placed there, shall constitute the first lien thereon, and shall be prior to all other liens whatsoever on said property, whether the said liens attach before or after the lien of said taxes."

As may be seen, section 315 of the Political Code and section 1824 of the Revised Civil Code, both enacted in 1902, were conflicting. Whereas in the former, that is, the Political Code, a lien without limitation was established, so that whatever amount might be due by a taxpayer for taxes on his real property was secured by a first lien thereon, in the latter, that is, in section 1824 of the Civil Code, the lien was still confined to the last annual assessment, due and unpaid.

Section 315 of the Political Code was amended in 1907 by the Act of March of that year, and then the lien, which according to the provisions previously in force was not subject to any limitation whatsoever, became limited, by virtue of the amendment, to the current annual assessment and to the three preceding ones. But the conflict between the Political Code and the Civil Code continued to exist as section 1824 of the Civil Code was not amended by said act, and we were then confronted with the fact that, while section 315 of the Political Code, as amended in 1907, declared the existence of a lien in favor of the People of Puerto Rico for the amount of the tax assessed for the current fiscal year and for the three prior fiscal years, section 1824 of the Civil Code still limited the lien to the last annual assessment, until by virtue of the Act of March 10, 1910, both statutes were harmonized, and from then on until the present time the tax lien has been confined to the last three annual assessments and the current one.

Therefore, when in 1930 the plaintiff purchased the property in question it was only subject to the lien imposed by

law, that is, to the current annual assessment at the time of its acquisition and to not more than the three annual assessments next preceding the same, provided such taxes had not been paid by the former owner.

Of course, if Anzalota, the former owner, owed other taxes in addition to the taxes already mentioned, such debt was a personal obligation of Anzalota not secured by any lien and which was never assumed by the plaintiff purchaser.

■■ If after the acquisition of the farm, the plaintiff had, let us say, for instance, in 1934, constituted a mortgage or any other lien thereon, such lien would have become subordinated, under our present legislation, to the lien in favor of the People of Puerto Rico for the last three annual assessments and for the current one. So that if the mortgagee had been compelled to foreclose the mortgage in 1936, and had caused the property to be sold at public auction, out of the proceeds of such sale, he would have had to pay to the People of Puerto Rico on account of taxes only the current taxes for the year 1936 and those corresponding to the last three fiscal years next preceding 1936. In like manner, if the farm had been awarded to him, he would have acquired the same subject to the lien of the current annual assessment and the three preceding ones, irrespective of the number of annual assessments owed by the former owner apart from the last three annual assessments and the one for the current year.

When the plaintiff herein bought the farm in 1930, there were due thereon the taxes for the fiscal years 1928–29 and 1929–30 and for the current fiscal year 1930–31. As the property described, located in the ward of Palmarejo, is the identical one said to be located in the ward of Abras, it is obvious that, under the law already mentioned, the plaintiff acquired it subject to the payment of the taxes corresponding to the years 1928–29 and 1929–30, which were comprised within the three years prior next preceding its acquisition.

As he owed the taxes for the latter fiscal years and also for the fiscal years 1930–31, 1931–32, and 1935–36, since the deposit, as made in the district court, of the amount of annual taxes for 1935–36 and for the first semester of 1936–37 did not operate as a payment, the collector of internal revenue acted properly in attaching the property of the plaintiff for the collection of the said delinquent taxes.

The taxes for the year 1928 and succeeding years had not prescribed because the law fixes no limitation period for the collection of land taxes. Therefore, the first and second errors assigned by the appellants were committed.

Having reached that conclusion, it becomes unnecessary to discuss the third error assigned, that is, to determine whether the complaint states facts sufficient to constitute a cause of action and whether the court had jurisdiction to take cognizance of the action.

As to the fourth assignment, viz., that the lower court erred in rendering judgment for the appellee, there is no question that there was error, bearing in mind the conclusion reached by us in regard to the first and second errors assigned.

From the reasons stated, the judgment appealed from must be reversed and another rendered instead in favor of the defendants, with costs but excluding attorney's fees.

Mr. Justice Travieso took no part in the decision of this case.